UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DEBORAH HELLER** | **CIVIL ACTION** |
| **VERSUS** | **NO. 24-2295** |
| **HILLSTONE RESTAURANT GROUP, INC.** | **SECTION: D(5)** |

### ORDER AND REASONS

Before the Court are two Motions for Summary Judgment filed by Defendant Hillstone Restaurant Group, Inc ("Hillstone").[1] Plaintiff Deborah Heller opposes the Motions,[2] and Hillstone has filed replies.[3] After careful consideration of the parties' memoranda, the record, and the applicable law, the Motions are DENIED.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

This case stems from a slip and fall at Houston's Restaurant ("Houston's") on St. Charles Avenue in New Orleans. On August 27, 2023, Plaintiff Deborah Heller alleges that she slipped and fell in the women's restroom at Houston's.[4] Plaintiff advises that upon entering the restroom, the floor of the restroom was dry.[5] However, according to Heller, upon flushing the toilet in the handicapped stall and subsequently exiting the stall, liquid began emerging from the restroom floor drain while she was leaving the handicapped stall, which caused her to slip and fall on the

---

[1] R. Docs. 31 and 37.
[2] R. Docs. 33 and 39.
[3] R. Docs. 34 and 40.
[4] R. Doc. 33-1 at ¶ 1.
[5] R. Doc. 33-1 at ¶ 4.

floor in the women's restroom.[6] As a result of her fall, Plaintiff suffered injuries to her spine that required medical treatment.[7]

Plaintiff originally filed this lawsuit in the Civil District Court for the Parish of Orleans on August 16, 2024.[8] In her petition, Plaintiff claimed that the liquid that shot out of the restroom floor drain amounted to a defective, dangerous, and hazardous condition which existed upon the premises owned and operated by Hillstone (owner of Houston's).[9] Furthermore, she contended that Defendant's failure to properly maintain the safety of its premises constituted negligence which caused plaintiff's injuries to her back and spinal cord.[10] The case was removed to this Court on September 20, 2024 pursuant to 28 U.S.C. § 1332.[11]

### A. The June 13, 2025 Motion for Summary Judgment[12]

Following removal, Defendant timely filed its first Motion for Summary Judgment, which focuses on the second prong of the Louisiana slip-and-fall analysis, regarding creation of the hazard or actual or constructive notice.[13] In the motion, Defendant contends that it is entitled to summary judgment on three grounds: (1) that plaintiff has failed to produce any evidence that any alleged defect in the sanitary/sewer line caused the alleged hazard, (2) that plaintiff relies too heavily on

---

[6] R. Doc. 33-1 at ¶ 2-3.
[7] R. Doc. 1-2 at ¶ 9.
[8] R. Doc. 1-2.
[9] R. Doc. 1-2, ¶ 6
[10] R. Doc. 1-2, ¶ 6-7 (In his affidavit, expert witness Damien Serauskas noted two documented incidents of backups in Houston's sanitary sewer system in the year proceeding the Heller incident (R. Doc. 33-2 ¶ 5)).
[11] R. Doc. 1.
[12] R. Doc. 31.
[13] R. Doc. 31-1.

2

inadmissible evidence to defeat summary judgment, and (3) that plaintiff's arguments on actual and constructive knowledge are without merit. Defendant argues that Plaintiff's expert witness, engineer Damien Serauskas, merely opined on potential causes of the sewage/sanitary line's blockage, but at no point concluded as to what the actual cause was in this instance.[14] Since the sewage/sanitary line was subsurface, Defendant claimed it lacked actual notice of the hazard prior to the alleged accident.[15] Defendant also claims to have lacked constructive notice/knowledge of the hazard since plaintiff has failed to meet the burden of proof demanded by La. R.S. 9:2800(C)(1).[16] Lastly, Defendant argues it did not create the hazard because its conduct did not fall within the definition of "create" as defined by the Fifth Circuit in *Deshotel v. Wal-Mart Louisiana, LLC*, in which the court held the defendant must be "directly responsible" for the plaintiff's injuries to be liable.[17]

Plaintiff responds that Fifth Circuit precedent does not require that the defendant had actual or constructive notice of the hazard prior to plaintiff's injuries.[18] Rather, Plaintiff contends that Defendant's failure in maintenance "created" the injury as the Fifth Circuit defined in *Deshotel*.[19] Plaintiff argues that a failure to remedy an area the employees were responsible for maintaining, rather than a direct

---

[14] R. Doc. 31-3 at p. 9-13 (In his deposition, Serauskas confirms that he has expressed no opinion on what actually caused the clog in this case (R. Doc. 31-14 at p. 11)).
[15] R. Doc. 31-2, ⁋ 20.
[16] R. Doc. 31-3 at p. 17.
[17] R. Doc. 31-3 at p. 20 (quoting *Deshotel v. Wal-Mart Louisiana, LLC*, 850 F.3d 742 (5th Cir. 2017)).
[18] R. Doc. 33 at p. 3-5.
[19] *Id.* (The court in *Deshotel*: "When a defendant 'maintains its own floors, the [plaintiffs] are not required to prove that it had notice or constructive notice of the possible [hazard]. If there [is] a [hazard], [defendant] created it, thus, the notice requirement of La. R.S. 9:2800.6 does not apply...'" (*Deshotel v. Wal-Mart Louisiana, L.L.C.*, 850 F.3d 742, 747 (5th Cir. 2017)).

3

action, is sufficient to constitute the creation of the hazard that resulted in Plaintiff's injuries.[20] Plaintiff maintains that Houston's decision to avoid scoping the pipes beneath the restroom in favor of temporary clog removals meets the standard of hazard creation in the eyes of the Fifth Circuit.[21]

In its Reply, Hillstone asserts that the Plaintiff has failed to establish Defendant's alleged negligence as the sole potential cause of her injury.[22] Defendant also claims that the Plaintiff relied on hearsay evidence from a witness, Daniel Morris, claiming that Hillstone allegedly had prior issues with flooding in its restroom.[23] Defendant further alleges that the Plaintiff's argument regarding actual and constructive notice is meritless; La. R.S. 9:2800.6(B)(2)'s notice prong requires a plaintiff to prove that the substance remained on the floor for such a time that the Defendant would have discovered its existence through ordinary care, a burden they assert Plaintiff has failed to carry.[24]

### B. The October 12, 2025 Motion for Summary Judgment[25]

Defendant filed a second Motion for Summary Judgment on October 12, 2025.[26] While its first Motion focused on the notice prong of La. R.S. 9:2800.6(B), this Motion concerns the unreasonable risk of harm prong, La. R.S. 9:2800.6(B)(1).[27] Defendant

---

[20] R. Doc. 33 at p. 4 (In his affidavit, Serauskas noted that the two previous backup incidents occurred in the same section of sewer piping as in this incident (R. Doc. 33-2 ¶7)).
[21] R. Doc. 33 at p. 9.
[22] R. Doc 34 at p. 3.
[23] R. Doc. 34 at p. 6 (In his deposition, Morris states his belief that Heller had consumed multiple alcoholic beverages the night of the incident (R. Doc. 34-1 at pp. 5-7)).
[24] R Doc. 34 at p. 9.
[25] R. Doc. 37.
[26] *Id.*
[27] R. Doc. 37-3 at p. 2.

4

argues that Plaintiff cannot provide evidence that demonstrates that an unreasonable risk of harm existed when Plaintiff slipped on the floor of the women's restroom.[28] Relying on the Louisiana Supreme Court's holding in *Farrell v. Circle K Stores, Inc*, Defendant states that the factors put forward by the court regarding what hazards constituted an "unreasonable risk of harm," point to a finding that there was no unreasonable risk of harm in the present case.[29] Defendant also points to the report of its expert, Engineer Kevin Vanderbrook, who opines that the coefficient of friction of the floors, even when wet, does not present a hazard to a person exercising reasonable care.[30] As a result, Defendant contends that it is entitled to summary judgment due to the alleged hazard not presenting an unreasonable risk of harm under Louisiana law.

Plaintiff responds that the risk-utility factors explained by the Louisiana Supreme Court in *Farrell* demonstrate that there is a genuine issue of material fact as to whether the liquid on the floor of the women's restroom created an unreasonable risk of harm.[31] Plaintiff argues that the hazard here and that the magnitude of the harm was large because of the injuries that one could—and did—suffer from slipping and falling.[32]

Defendant replies that its expert's testimony regarding the coefficient of friction is properly before the Court on summary judgment and has not been

---

[28] *Id*. at p. 8.
[29] 359 So.3d 467; R. Doc. 37-3 at pp. 8-9.
[30] R. Doc. 37-3 at p. 4.
[31] R. Doc. 39 at pp. 2-3.
[32] *Id*. at p. 4.

challenged by Plaintiff. Furthermore, it argues that the occurrence of the accident, in and of itself, is not sufficient proof that the puddle on the floor presented an unreasonable risk of harm.[33] Lastly, Defendant emphasizes that the Farrell factors, when applied to the present case, support summary judgment because Plaintiff has failed to present evidence that she can prove that the puddle constituted an unreasonable risk of harm.[34]

## II. LEGAL STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[35] A dispute is "genuine" if it is "real and substantial, as opposed to merely formal, pretended, or a sham."[36] Further, a fact is "material" if it "might affect the outcome of the suit under the governing law."[37] When assessing whether a genuine dispute regarding any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[38] While all reasonable inferences must be drawn in favor of the nonmoving party, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or "only

---

[33] R. Doc. 40 at p. 3.
[34] *Id.* at pp. 4-5.
[35] FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).
[36] *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) (citing *Wilkinson v. Powell*, 149 F.2d 335, 337 (5th Cir. 1945)).
[37] *Anderson*, 477 U.S. at 248.
[38] *Delta & Pine Land Co. v. Nationwide Agribus. Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008) (citations omitted).

6

a scintilla of evidence."[39] Instead, summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party.[40]

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."[41] The non-moving party can then defeat summary judgment by either submitting evidence sufficient to demonstrate the existence of a genuine dispute of material fact or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."[42] If, however, the nonmoving party will bear the burden of proof at trial on the dispositive issue, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[43] The burden then shifts to the nonmoving party who must go beyond the pleadings and, "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"[44]

### III. ANALYSIS[45]

Both parties agree that Louisiana law applies to this matter as the court sits

---

[39] *Id.* (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)) (internal quotation marks omitted).
[40] *Id.* at 399 (citing *Anderson*, 477 U.S. at 248).
[41] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264–65 (5th Cir. 1991).
[42] *Id.* at 1265.
[43] *See Celotex*, 477 U.S. at 322–23.
[44] *Id.* at 324 (quoting FED. R. CIV. P. 56(e)).
[45] This matter is before the Court on diversity jurisdiction, so the Court applies Louisiana law. *See Weatherly v. Pershing, LLC*, 945 F.3d 915, 925 (5th Cir. 2019).

in diversity. The parties further agree on the substantive law applicable to the present case: Louisiana Revised Statute 9:2800.6. Louisiana's slip-and-fall law, La. R.S. 9:2800.6, creates a duty for merchants to persons on his premises, stating merchants must exercise reasonable care in maintaining safe conditions in aisles, passageways, and floors.[46] La. R.S. 9:2800.6(B) establishes the burden of proof for a negligence claim against merchants for persons lawfully on the premises and requires that plaintiffs prove that

> (1) the condition presented an unreasonable risk of harm to the claimant and that risk was reasonably foreseeable,
> (2) the merchant either created the hazard or had actual or constructive notice of the condition which caused the injury, and,
> (3) the merchant failed to exercise reasonable care.[47]

The first Motion for Summary Judgment addresses the second prong: whether Hillstone created the hazard or had actual or constructive notice of the hazard.[48] "Constructive notice" refers to a situation in which the claimant has proven that the condition existed for a period of time sufficient for the merchant to have discovered it with reasonable care.[49] The second Motion for Summary Judgment addresses the first prong: whether the liquid on the floor created an unreasonable risk of harm.[50] Each of the Motions will be discussed in turn.

---

[46] La. R.S. 9:2800.6(A).
[47] La. R.S. 9:2800.6(B)(1)-(3).
[48] R. Doc. 31.
[49] La. R.S. 9:2800.6(C)(1).
[50] R. Doc. 37.

8

### A. There is a genuine issue of material fact regarding whether Hillstone had actual or constructive notice of the condition that caused the injury.

The second prong of Louisiana's "slip-and-fall" statute, La. R.S. 9:2800.6, requires a plaintiff to provide "proof that the merchant is directly responsible for the spill or other hazardous condition," which can be achieved by proving either that the defendant created or had actual or constructive notice of the hazard.[51] Both the act of creating a hazard and the failure to act upon a known hazard each constitute "created" for liability purposes under La. R.S. 9:28000.6(B).,

While Defendant argues that Hillstone had neither actual nor constructive notice of the hazard and did not create the hazard, Plaintiff contends that the staff of Houston's was aware that the pipes beneath the women's restroom were continually getting backed up and opted to perform temporary solutions rather than hire a plumbing company to conduct a thorough inspection.[52] Defendant relies on the Fifth Circuit's reasoning in *Deshotel*. In that case, the trial court granted Wal-Mart's Motion for Summary Judgment; the Fifth Circuit reversed, explaining that the store manager's deposition testimony that the leaky roof was a "known issue" and that "anybody in the building . . .would be on the lookout for new leaks that had been identified or marked"[53] when it rained, as well as documentary evidence of a roofing contractor, precluded summary judgment.[54] Defendant argues that, unlike the leaky

---

[51] *Deshotel v. Wal-Mart Louisiana, LLC*, 850 F.3d 742, 747 (5th Cir. 2017) (quoting *Ross v. Schwegmann Giant Super Markets, Inc.*, 734 So.2d 910, 913 (La. 1st Cir.), *writ denied*, 748 So.2d 444 (1999)).
[52] R. Doc. 31-3 at p. 17; R. Doc. 1-2 at ¶ 6-7.
[53]
[54] *See* 850 F.3d at 746; R. Doc. 31-3 at p. 20.

9

roof in *Deshotel*, the issue in the women's restroom in Houston's was not known by the employees.[55] Plaintiff, however, points to the fact that there were two instances of piping problems within a year of the incident.[56]

Defendant, relying on *Leger v. Wal-Mart Louisiana, LLC* counters that the Fifth Circuit has held that "conjecture about past leaks" cannot form the basis of liability under the Louisiana's slip-and-fall statute.[57] Defendant's reliance on *Leger* for this argument is somewhat misplaced. The Court's analysis in *Leger* focused on the amount of time that the water was on the floor prior to the Plaintiff's slipping, as part of the analysis regarding constructive notice.[58] Here, Plaintiff's argument is not that the water remained on the floor for a long period of time but that Defendant had prior knowledge of plumbing issues with the women's restroom and failed to take any action to remedy the existing issues. Defendant also relies on the court's ruling in *Bearb v. Wal-Mart Louisiana, LLC*, in which the Fifth Circuit affirmed summary judgment in the absence of "any facts in the record to support their claims."[59] Here, unlike the plaintiff in *Bearb*, Plaintiff has provided record evidence, more than mere speculation, regarding the source of hazard that Plaintiff claims caused her to slip and fall.[60] Lastly, Defendant relies on the Fifth Circuit's holding *in Fraise v. Wal-Mart Louisiana, LLC,* in which the court affirmed summary judgment when the sole

---

[55] R. Doc. 31-3 at pp. 20-23.
[56] R. Doc. 33 at pp. 4-5.
[57] R. Doc. 31-3 at p. 21 (quoting *Leger v. Wal-Mart Louisiana LLC*, 343 F. App'x 953, 955 (5th Cir. 2009) (unpublished)).
[58] *See Leger*, 343 F. App'x at 954-55.
[59] *Bearb v. Wal-Mart Louisiana Liab. Corp.*, 534 F. App'x 264, 265 (5th Cir. 2013) (unpublished).
[60] *See, e.g.,* R. Doc. 33-2, *Report of Damien Serauskas, PE*; R. Doc 33-3, *Deposition of Daniel Morris*, at p. 4 ("I believe there was like an example shown of like the water coming out also with another flush.").

10

evidence produced by plaintiff in response to summary judgment was an affidavit of a former Wal-Mart employee. Here, the record contains evidence of more than mere speculation regarding the source of the hazard Plaintiff alleges caused her to fall.[61]

Defendant conceded that there were two prior incidents of sewage backing up into the women's restroom in the year prior to Plaintiff's fall, with the most recent one occurring approximately nine months prior to the incident in question.[62] Although Defendant's 30(b)(6) representative Kyle Frasure testified that each of these times "a defined obstacle came out of the lines that should not have been there in the first place,"[63] Plaintiff's expert Damien Serauskas stated that, in his opinion, Hillstone's level of operational sophistication in regards to their maintenance for its grease waste lines suggested that "[D]efendant should have recognized the need for similar diligence regarding its sanitary sewer piping after multiple sewage backup incidents."[64] Additionally, Serauskas opined that the run of piping in which he found bellies upon his inspection "is the same piping cleared in the two incidents immediately preceding the Heller incident," which "can lead to recurring blockages and affect the integrity and performance of the overall plumbing sewer system."[65] The statements of Plaintiff's expert provide evidence regarding an awareness of plumbing issues creating sewage backup "in the area where Plaintiff fell."[66] This

---

[61] *Fraise v. Wal-Mart Louisiana LLC,* 231 F. App'x 331, 333 (5th Cir. 2007) (unpublished).
[62] R. Doc. 31-3 at p. 7.
[63] R. Doc. 31-10, *Deposition of Kyle Frasure*, at p. 10.
[64] R. Doc. 33 at pp. 2-3.
[65] R. Doc. 33-2, *Report of Damien Serauskas, PE*, at p. 7.
[66] *Walker v. Wal-Mart Stores, Inc.*, No. CV 15-2169, 2016 WL 8716478, at *3 (W.D. La. Nov. 4, 2016). Plaintiff further relies on the testimony of her companion Daniel Morris to demonstrate that Defendant created the hazard. In his deposition, Morris testified that a Houston's employee (whom he believes was the manager) stated that the plumbing issue in the women's restroom had been recurring,

issue of Houston's knowledge of sewer problems is a genuine dispute regarding a matter that will likely affect the outcome of the trial under Louisiana law. Because of this genuine issue of material fact, summary judgment regarding whether Hillstone created the hazard at issue or had constructive notice of the hazard must be denied.

### B. There is a genuine dispute of material fact as to whether liquid on the floor of the restroom constituted an unreasonable risk of harm.

Whether a hazard constitutes "an unreasonable risk of harm" under Louisiana law requires courts to balance "the gravity and risk of harm against the individual and societal rights and obligations, the social utility, and the cost and feasibility of repair." This risk-utility balancing test has been further distilled into four factors that courts use to analyze whether the hazard presents an unreasonable risk of harm: "(1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, including the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and, (4) the nature of the plaintiff's activities in terms of social utility or whether the activities were dangerous by nature."[67] The Court will address each of these factors in turn.

Following its consideration of the four factors of the risk utility balancing test,

---

and that the staff were actively trying to address it. (R. Doc. 33 at pp. 2-3). Nick Seigel, whom Defendant believes is the person to whom Morris is referring, testified that he was unaware of any prior plumbing issues with the women's restroom. *See* R. Doc. 31-8. "Hearsay is not competent summary judgment evidence, unless its proponent can show that the statement can be presented in an admissible form at trial." *Miller v. Michaels Stores, Inc.*, 98 F.4th 211, 218 (5th Cir. 2024) (internal citations omitted). Because Plaintiff, as the proponent of the statement, has not demonstrated that the statement can be presented in an admissible form at trial, the Court does not take the statement into account in its analysis of the pending Motion.

[67] *Farrell v. Circle K Stores, Inc.*, 359 So. 3d 467, 474 (La. 3/17/23).

the Court then turns its attention to the Fed. R. Civ. P. 56 standard for summary judgment.

### 1. Utility of the Complained-of Condition

For the utility of the complained-of condition, the first prong, a court will look to see whether the condition was intended or present by design. If a court were to find that the condition was intended or present by design, it would likely have some kind of utility, which weighs against a finding of an unreasonable risk of harm. Both parties acknowledge that a puddle of water in the women's restroom at Houston's is neither intended nor present by design.[68] As a result, this factor weighs in favor of a finding that the hazard here constituted an unreasonable risk of harm.

### 2. The Likelihood and Magnitude of Harm

As to the second prong, courts look to both the likelihood and magnitude of the harm and how obvious and apparent a hazard was because "a defendant generally does not have a duty to protect against that which is obvious and apparent."[69] If the condition is "likely to cause harm, that weighs in favor of finding it unreasonably dangerous."[70] Courts typically consider the size, context, and location of the condition, as well as the accident history" when evaluating this prong of the analysis.[71] The parties spend most of their briefing arguing this factor. Here, Defendant relies on the Louisiana Supreme Court's finding in *Farrell* that a person who encounters a

---

[68] R. Doc. 37-3 at pp. 9-10; R. Doc. 39 at p. 3.
[69] *Bufkin v. Felipe's Louisiana, LLC*, 171 So. 3d 851, 856 (La. 10/15/14).
[70] *Farrell*, 359 So. 3d at 474.
[71] *Latour v. Steamboats, LLC*, 371 So. 3d 1026, 1036 (La. 10/20/23).

13

pool of water would not conclude that it presents a likelihood of great harm.[72] Plaintiff maintains that sewage water unexpectedly pouring from a bathroom drain is a hazard that is likely and which could cause great harm.[73]

Defendant further relies upon the Louisiana Second Circuit's holding in *Bearden v. K&A* that there must be evidence that a puddle was slippery in order for the puddle to be found to create an unreasonable risk of harm.[74] Defendant points to the report of Engineer Kevin Vanderbrook, who opined that, even when wet, the floor of the Houston's restroom had a dynamic coefficient of friction of 0.61, which exceeds minimum engineering standards.[75] Furthermore, Defendant emphasizes that Vanderbrook opined that "[e]ven when wet, these floors would not represent a hazard to persons exercising reasonable care."[76] Plaintiff responds that this expert analysis "ignores the element of surprise" in the case and Plaintiff's reflex to avoid the sewage present on the floor.[77] The Court agrees with Plaintiff that the expert's opinion regarding the coefficient of friction does not foreclose the fact that Plaintiff, in her surprise, may have slipped even while exercising "reasonable care." Such a determination as to whether reasonable care was exercised is a factual dispute firmly in the province of the jury and is inappropriate for disposition on summary judgment.

Plaintiff also relies on the evidence of two prior incidents where Houston's contract plumber was summoned to address backups in the sewer lines to further

---

[72] R. Doc. 37-3 at p. 10 (citing *Farrell*, 359 So. 3d at 478-79).
[73] R. Doc. 39 at pp. 2, 4.
[74] R. Doc. 37-3 at p. 10 (citing *Bearden v. K & A of Monroe, LLC*, 399 So.3d 515 (La.App. 2nd Cir. 7/17/24)).
[75] R. Do. 37-9, *Report of Kevin Vanderbrook*, at p. 8.
[76] *Id*.
[77] R. Doc. 39 at p. 4.

14

suggest that this factor weighs in favor of a strong likelihood of magnitude of harm. Regarding the accident history, there is a history of prior plumbing incidents in the Houston's restroom, including two accidents that occurred in the year prior to Plaintiff's fall.[78] Plaintiff further argues that the magnitude of potential harm to be suffered as a result of the hazard is large. Plaintiff points out that she required spinal surgery after her fall in the restroom.[79] Because the issues with sewage back-up were relatively infrequent and temporally distant from this incident, this factor tilts in favor of finding that the sewage did not present an unreasonable risk of harm.

### 3. The Cost of Preventing the Harm

Regarding the third prong, the fact-finder must "balance the risk of harm against the cost and feasibility of repair."[80] In the present case, there has been no summary judgment evidence addressing the exact cost and feasibility of repair. However, Plaintiff, in response to Defendant's motion, points to the affidavit of Engineer Damien Serauskas, who explains that, in his opinion, "the appropriate engineering response following repeated backups is to conduct a full camera inspection of the line to identify any underlying structural defects."[81] While there is no evidence of the exact dollar figure required to repair the alleged issue with the plumbing, Plaintiff has pointed to record evidence that demonstrates that there was a feasible repair for the alleged issue. In the absence of evidence regarding the exact

---

[78] R. Doc. 37-2, 39-1 at ¶ 8. ("In the year prior to the subject accident, there were two (2) incidents where Houston's contract plumber was summoned to address backups in the sewer/sanitary lines, with the most recent one occurring nearly nine (9) months prior to the subject incident.").
[79] R. Doc. 39 at p. 4.
[80] *Broussard v. State ex rel. Off. of State Bldgs.*, 113 So. 3d 175, 192 (La. 4/5/13).
[81] R. Doc. 39-2, *Affidavit of Damien Serauskas, P.E.*, at ¶ 9.

dollar figure of preventing the harm, however, the "Court is unable to consider this factor in applying the risk/utility balancing test."[82]

### 4. The Nature of Plaintiff's Activities

Lastly, examining the fourth prong requires a "consideration of the nature of the plaintiff's activity in terms of social utility or whether the activities were dangerous by nature."[83] Plaintiff was injured after using the restroom, an important activity that is not dangerous in nature. While Defendant argues that even an important activity that is not dangerous in nature "does not weigh heavily as a consideration in determining an unreasonably dangerous condition," the social utility is nonetheless a factor that this Court must examine.[84] The fourth factor points toward a finding that the sewage puddle presented an unreasonable risk of harm.

After considering the factors of the risk-utility balancing test and considering the Fed R. Civ. P. 56 standard for summary judgment,[85] the Court finds that there are genuine issues of material fact that preclude a determination that the complained-of hazard did not constitute an unreasonable risk of harm. Indeed, especially as to the likelihood of harm, there are genuine disputes of material fact as to whether the "[D]efendant breached a duty owed" to Plaintiff in this case, and the Court concludes that the Plaintiff may be able to prove that Defendant breached the duty owed to her at trial.[86] Under Louisiana law, whether the Defendant breached a

---

[82] *Farrell v. Circle K Stores, Inc.*, 359 So. 3d 467, 479 (La. 3/17/23).
[83] *Id.*
[84] *Id.*
[85] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."
[86]*Broussard*, 113 So. 3d at 185; *see also Farrell*, 359 So. 3d at 478 ("Summary judgment, based on the absence of liability, may be granted upon a finding that reasonable minds could only agree that the

duty owed to Plaintiff will likely affect the outcome of the suit; thus, it is material. For the foregoing reasons, the Court denies summary judgment as to whether the sewage created an unreasonable risk of harm.

## IV.   CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that the Defendant's Motions for Summary Judgment[87] are **DENIED**.

New Orleans, Louisiana, January 8, 2026.

*[signature: Wendy B Vitter]*

**WENDY B. VITTER**
**United States District Judge**

---

condition was not unreasonably dangerous; therefore, the defendant did not breach the duty owed. In such instance, the plaintiff would be unable to prove the breach element at trial.").
[87] R. Docs. 31 and 37.